Good morning, Your Honors. Good morning. I'm Matt Kleiner on behalf of Appellant Aetna Life Insurance Company. I'd like to reserve approximately five minutes for rebuttal. Keep your eye on the clock. I'll try to help you. Thank you, Your Honor. This appeal presents an issue of first impression before this Court. Whether the application of California Insurance Code Section 10110.6 to void discretionary clauses in self-funded ERISA plans is preempted by ERISA. Did you raise this issue before the District Court? Your Honor, this preemption issue was not raised before the District Court, but it is an issue of law and can be raised for the first time on appeal. It can, but that's up to us whether or not we decide to treat it that way, right? That's correct, Your Honor. Okay. And one of the reasons that I would encourage you to consider this issue for the first time on appeal is that if you look at the District Court decisions that we cited to this Court, the Martin decision and the Johnson decision, both of those decisions talk about and criticize the District Court's decision in this case. And the reason why they criticize the District Court's decision in this case is because this case is being put forth as authority that ERISA does not preempt self-funded plans. And because of that, Martin and Johnson distinguished and criticized Willoughby because Willoughby does not actually talk about FMC, which is the United States Supreme Court, on this decision. So I would encourage you to decide this issue to avoid kind of further district courts kind of deviating from the Supreme Court decision. As you know, we hopefully try to be economical in our decisions and not decide issues that we don't have to decide. The District Court said in a footnote that even if, which is what would happen in the preemption situation, standard of review was abuse of discretion with no degree of skepticism, it would still conclude that you had prematurely terminated the benefits for a number of reasons. Do you recall that footnote? As you recall that footnote, Your Honor. What the District Court seems to be saying is that even if we decide this on the basis that I think Aetna would like, the District Court would rule the same way. What are we to make of that? The District Court did not apply the correct analysis, even in its footnote that was offered in the alternative to the de novo review. The District Court, in its footnote, says that under abuse of discretion review, it would review the same way. And it cited two primary points. The first point was that it was finding that all of the treating physicians are just more credible than the reviewing physicians. And pursuant to Ninth Circuit authority, that's essentially the treating physician rule. You can't give more credibility to the treating physician just because they're the treating physician. And that's under the Black and Decker case. The treating physician rule does not apply in ERISA. The second point that I'd like to bring to this Court's attention is that SILOMA, which is a decision that is relied upon in that footnote, looks at abuse of discretion in a different context than in this case. And the Court applied essentially what would be the SILOMA abuse of discretion review rather than a straightforward abuse of discretion review. And let me explain what I mean by that. In SILOMA, there was a structural conflict of interest. That means that the entity that's making a decision on the disability claim is the same entity that's paying the benefits on that disability claim. So there's an inherent conflict of interest whereby the decision maker is going to try to make a decision that would benefit itself. In this case, it's a self-funded plan, meaning that Boeing is the one that funds the benefits and Aetna is the one that makes the decision. So there is no structural conflict of interest. There was no other conflict of interest that was identified by the District Court.  Because the Court repeatedly referenced the fact that it had to apply an increased or skeptical view of the abuse of discretion review. That's true, and I accept your point that this is such an unusual situation, but nonetheless, as the Court said, if I apply an abuse of discretion standard with no real skepticism of the Court of Appeals, honoring the point that you make, this is a self-funded plan, Aetna has no conflict of interest, it would still conclude the same way. I admit he cites some cases that are inapposite, but does that not indicate how the District Court would rule? It may indicate that there's a preference by that particular District Court to rule in favor of the plaintiff in this particular case. However, it does not mean that the process of sending it back and giving the appellant a fair trial, so to speak, under the correct standard of review, under the correct facts, is a moot point. I think it would be fundamentally unfair to say, well, we believe that the District Court is going to go ahead and do this, even under the correct standard of review, and then not give us the chance to go back and make that argument before the Court. That would also give us the ability to come back to the Court of Appeal and say, the District Court didn't change its decision, but if you look at the facts that are presented here, under the correct standard of review, we would win. Thank you. Who prepared findings of fact and conclusions? I know that counsel prepared them. I believe that both counsels submitted their own findings of fact and conclusions of law. I didn't compare the two to know which facts were brought in. Who submitted what findings of fact and conclusions? That's my understanding, Your Honor. If we were applying an abuse of discretion standard, would we be giving deference to positions of the positions in this case? No, Your Honor. How would we do it differently? You would evaluate the decisions based on the merits and compare them. And so in this case, you would have to decide not whether or not the treating physicians were correct. You have to decide was there any reasonable basis upon which Aetna's decision can be affirmed. And that's the correct abuse of discretion standard without any skepticism that would be applied because there's no conflict of interest. E-Plan is a payroll practice and not subject to ERISA. That's a New York appeal, right? That is a New York appeal, yes, Your Honor. So should we think about that under the same criteria about your new argument on appeal? I would argue that they are different. And they are different because whether or not this is a payroll practice is fundamentally a factual issue, whereas the application of ERISA and the preemption doctrine is a legal issue that can be applied for the first time on appeal. So the factual issue needs to be vetted before the district court before a determination can be made. So what facts need to be vetted? What facts need to be determined making it a factual issue as to a payroll practice? Ultimately, whether it's a payroll practice plan depends on where the funds are coming from, how similar the payments are being made to be similar to normal compensation that's being processed as general compensation or salary. That would have to be determined by the district court on a factual basis. That's right. And they must determine those factual determinations in order to make a decision as to whether this is a payroll practice plan, right? That's correct, Your Honor. I'm not saying you're right. I'm just trying to understand your argument. The district court reference indicated that every doctor who actually examined Willoughby thought she was disabled, even though Aetna said there was a lack of objective, that any physician examined her or undergo any particular testing, what's the benefit of sending it back other than the preemption issue which you're interested in? What's the benefit of sending it back? I mean, you can't change the facts. Those are the facts. What would be an abuse of discretion? What would the abuse of discretion be if the district court said the same thing and ruled the same way? Going back to the Saloma decision upon which that footnote is based, in Saloma there was a position where all the treating physicians had concluded, and the court said in a dramatic fashion, that the plaintiff was disabled. The plaintiff's counsel in that case offered the plaintiff for an IME, specifically offered the insurance company, said she's available for IME, go ahead and take it. Insurance company refused to take it. All of the medical evidence in that case overwhelmingly supported disability. So based on this skeptical view that the court is required to give when you have a conflict of interest in Saloma, the court basically said the insurer's refusal to conduct an IME has to be reviewed with such skepticism that if they had conducted the IME, the conclusion probably would have been that the plaintiff was disabled in that case. Those facts don't exist here. Even the treating physicians themselves in this case, definitely not in a dramatic fashion, but they are a little bit all over the board with respect to the plaintiff's condition, especially if you look at the time period in question from February to June of 2013. For example, the treating Dr. Edelman, one of the things that he talks about was she was originally diagnosed with migraines, and that was part of her disabling condition. But then he changed his mind and said, no, it's not the migraines, it's the disabling condition. In the peer review or peer-to-peer review conferences, he said that these conditions were largely subjective and based on the self-reported complaints of the plaintiff. He also said that in examining her, he didn't notice any cognitive deficits, so that you have all these different various facts that go into it. So regardless of whether or not an IME was taken, based on the facts as they present themselves, under abuse of discretion, there is a reasonable basis by which Edelman denied this particular claim. You wanted to save five minutes. We're a little less than that now. Do you want to save the balance of your time to respond to your opponent? I think just one point I'd like to make very quickly would be with respect to the United States Supreme Court, which has already decided that the Deamer Clause exempts self-funded plans from state laws that regulate insurance under the Savings Clause. Applying that decision to this case necessarily means that the insurance code section that we're dealing with would also be preempted by state law. With respect to that, I'll reserve the balance of my time.  Good morning, Your Honors. May it please the Court, Christian Garris on behalf of Mrs. Willoughby, Eva Willoughby. The first issue which the Court already brought up is the mootness of this appeal. The Court went through the entire administrative record and made a decision on the propriety of the denial and found that it was wrong under the de novo standard and it was an abuse of discretion. Just a minute. Before we get to that, because I have some worries. If you say I'm going to give a de novo review, I guess that's what I can do. I'm not going to give an abuse of discretion review. You're going to review a case on a little bit different analysis than abuse of discretion. When I read the Court's decision, and that's why I talked to your opponent about it, it seems to me that the District Court was trying to decide who to give deference to. The District Court, that's not an abuse of discretion standard at all. That's quite different. That's a de novo standard. The Court is trying to make a decision. So even when I read the footnote, I don't think they're really applying abuse of discretion as I understand how it should be applied on an abuse of discretion standard. I say that because I was once a district judge, and I frankly didn't like when the Court of Appeals, bless their hearts, which I now sit on, give me abuse of discretion standard and then don't give me abuse of discretion standard. They just substitute their own idea of a good time and say they've done it. That seems to be what they've done here, what this judge has done. I think in the body of the conclusions, in fact, which were written by the District Court, incidentally, to answer that question earlier, the body of it, clearly the court was applying the de novo standard because that's the standard that the court felt applied. So what you're going to argue to me is everything except that one footnote surely showed de novo, but that one footnote which really did not apply abuse of discretion is enough for me to say it's okay? I believe the statement in the footnote is, however, even if I looked at this under the abuse of discretion standard, I would find that denying disability benefits to someone who's had a stroke and has mental cognitive problems, that would be an abuse of discretion. That is not applying the abuse of discretion standard. That's what I'm saying. I read that and I said, well, I appreciate what you said, but you really haven't applied the standard. If you're going to apply the standard, then Aetna gets some deference. So you're going to have to decide why Aetna abused its discretion and what it did. And he doesn't talk about that at all. I think Judge Marshall reached that conclusion. She did not elaborate on the conclusion. That's how you sustain your abuse of discretion decision. You do some elaboration. I was there. I was trying to keep the Court of Appeals off my back. So I said, this is abuse of discretion decision, this is the way I decided, and this is why. So stay off of me. I've made my decision. She didn't do that. If she had done that, it would have been easy. I think the facts of the case, what Aetna did here is so egregious that I think it was just obvious to the court that under any standard, the denial had to be overtimed. Well, it might be obvious, but when you give discretion to the underlying judge to make these decisions, the underlying judge can make that decision on a basis that's totally foreign from what you might do, and yet you've got to sustain it because you've got to give deference. Because it's got to be out of the question. It's got to have no foundation, no way to sustain what they did. At that point, you indicate that what Aetna did was outrageous. What are the, say, two most outrageous things that Aetna did from your perspective? I think the two things are basically ignoring the CAT scans, the neuropsych testing. Those are the objective testing that are appropriate and did occur in this case. And the radiology. CAT scan and what else? Neuropsychological testing. That was done. It's in the record. And those are the things that were done. There was no testing that Aetna said, well, gee, if only you had done this, we could have some evidence of this disability. Did they ignore them, or they just didn't give them credit, basically? Well, one of their doctors said, I don't have any of this testing. I don't have it. And that's the problem with not having Aetna go out and hire a doctor to examine the patient. This is not an application of the treating physician role, trumping other physicians who have examined the insured here, the patient, Mrs. Willoughby. The only person to ever see her in person were the treating physicians. Aetna just decided to save some money and not hire someone to actually look at her and examine her and reach a conclusion. The problem comes in that there is no case, and you can present it. Yes, that if every treating physician comes out one way, that Aetna has to come out that way. Of course not. And, therefore, under an abuse of discretion standard, we would be looking at it differently than saying, well, I'm giving my definition. We would be making a different decision. But when there is objective testing that does. There's no question. You have some great stuff. There's no question. If I had been a judge down there and I'd been wanting to fashion my decision to pass the appropriate test, I'd know what to say. My worry is that the judge did not know what to say or didn't say it and knew it. I think one issue which we haven't really discussed, which is an important issue that's sort of larger than this case, is this California Insurance Code statute, which I think is very clear it applies if there's insurance. For example. Well, aren't you moving your STD, a payroll practice, and not subject to ERISA issue? That's actually a separate issue. This court, this circuit, has actually decided a discretion case out of Montana, but has never decided anything relating to this California Insurance Code section, which clearly does regulate the business of insurance. So under the long-term disability benefits in this case, which are insured by ENA, there's no question that the discretionary language is stricken by the operation of this statute because it's something that regulates the business of insurance, which is saved from ERISA preemption. So are you waiving your potential waiver argument? I'm sorry, Your Honor? Are you waiving the waiver of the preemption argument by your argument? I don't think so. It seems to me that what you're saying is I didn't ever see anything in anything you'd put before me where you said ENA can't make this argument. It's waived. Oh, I haven't made that argument. Okay. So then we can fully address the preemption argument in your mind. I think so, yes, Your Honor. Even though they didn't make it in the district court? The district court is actually the one that raised the issue sui sponte at the trial, and there was oral argument on the subject, and then it appears in the. . . Well, the answer is yes. Yes. Okay. So the defendant raised preemption in its opening brief. In the response brief, you didn't argue forfeiture, which we've already covered. But I didn't even see an argument as to why the statute wasn't preempted. What I saw was that you pivoted to the payroll practice issue. I don't think there's a dispute, and there are many cases in the district courts, Thomas being one that came out after I briefed this case, the Northern District of California, that have held that this California Insurance Code section is exempt from a risk of preemption by the terms of a risk itself that says that state laws that regulate the business of insurance are exempt from a risk of preemption. How do you distinguish the Holiday case? Oh, the FMC? Okay. That case was when the Supreme Court was dealing with a totally self-funded plan where there was no insurance company involved at all. So after risk of preemption, laws that regulate the business of insurance, there's the Deamer Clause, which says that the plan itself cannot be deemed to be an insurance company. So laws that regulate the business of insurance can't apply to the plan itself. In FMC, the reason why the defendant in that case was FMC and not at an insurance company is because there was no insurance company. Here, there is at an insurance company. And under the long-term disability benefits in this case, I don't ---- Insurance company, Aetna here is not the insurer. Aetna is just the administrator. And Foeing is the self-insurer. Of the short-term disability benefits, but not the long-term disability benefits. And that's why the question is, is this all one plan in one document, which is what the master plan says it is. The Boeing master plan says this is one large plan. All these benefits, short-term disability, long-term disability, are all part of one plan. And the discretionary language in the policy, or in these documents, rather, is in the master policy, which covers all the benefits, some insured and some not. And it's also in the summary plan description. That's the separate document that was handed out to the employees. And there, the discretionary language is in a separate general section. It is not in the short-term disability plan section. So I would argue that this insurance code section, because it regulates the business of insurance, because the long-term disability benefits are insured, it voids that provision. The Shroff case. The Shroff says that those state laws try to regulate employee benefits plans by defining or treating the plans as insured. If the plan is uninsured, the state may not regulate it. State insurance regulation of self-funded plans is preempted. That's my case, 2009. Not mine, but it's somebody who I have to say is not. So, yes, Your Honor. In that case, both the long-term and the short-term disability benefits were self-funded. The only involvement in MetLife in that case was as an administrator. They were not insuring any of the benefits.  Yes, Your Honor. I don't think they distinguished that particular idea in Shroff. If you want to give me the page number, I'll look at it, but I don't think that happened. Page 902. The court said, as noted above, both the short-term and long-term plans were self-funded. MetLife administers the plans and has sole discretionary authority to determine a participant's. And in the facts, they cited that. But what does that have to do? Did they focus in on that? Well, they didn't need to because there was no insurance. There was nothing that was insured. They were just an administrator. So here, because there is no discretionary clause only in the STD part of these documents, the provision is stricken by operation of the code because some of these benefits are insured. In FMC and the Shroff case, in both those cases, there was nothing that was insured. I think here I would agree that the discretionary clause would stay in there, regardless of the statute, if Aetna was merely an administrator. But here they are insuring some of the benefits, and that's why that's a critical issue. Are they insuring the short-term benefits? No. Does this case involve long-term benefits? It involves both short-term and long-term. Well, I thought under this case it would only involve the short-term, and if she got to the end of the short-term, she might get on to the long-term. She never got on the long-term, right? Yes, that's true. Aetna has a practice now of denying people right before they get to the end of the short-term disability benefits. The honest truth is, in answer to my good colleague's question, I have to really say this never involved the long-term. The only part of it that might have involved the long-term is that if she had completed the short-term, she might have been able to go the long-term. That's certainly true, that the short-term disability benefits were not exhausted because the benefits were denied by Aetna, and I would argue in its own self-interest, so as to not have to pay the long-term disability benefits. I'm not sure I understand this argument. You're saying that Aetna, not ensuring anything in the short-term, and that abuse of discretion without any, if you will, preference, is the standard. But then you're saying that with respect to the long-term plan, what you said is part and parcel of the whole thing, that Aetna is ensuring the plan, so it does have an interest, and you have a different standard. Is that correct? I would argue, Your Honor, that the de novo standard should apply for both the short-term and the long-term. I don't think... Because of the insurance, the fact that you claim that Aetna is ensuring part of this plan. They are ensuring the long-term disability benefits. And what you're really arguing is because they're ensuring the long-term, then the California statute would not be preempted as to that plan. That's your argument. Exactly, Your Honor. That's what I understand your argument is. May I ask one more question? So in your red brief, you argue that this is a payroll practice. If it's a payroll practice, does ERISA apply? It does not. By its own terms, the Department of Labor has decided that anything that is a payroll practice and short-term disability benefits can sometimes be a payroll practice. And I would argue here that they are because the cases, there's very few cases, I've cited the cases that I was able to find, even if only 60% of the benefits are paid, as long as it's processed through payroll like normal, payments are made to the employees, it can be considered a payroll practice. It's made out of general funds. It's not coming out of a trust. If it's not an ERISA plan, it's not an ERISA case. So what's your cause of action if ERISA doesn't apply? I think for the short-term disability benefits, and this, of course, only applies to those, ERISA definitely would apply to the long-term. I think it would just be a matter of breach of the plan, which is the cause of action in the complaint. It just wouldn't sound under ERISA. What would it sound under? I think it would just be general contract law. And where's the federal jurisdiction if it's just contract law? It would be diversity of citizenship. And do we know what Willoughby's citizenship is? Probably California. Do we know what Aetna's citizenship is? I believe it's in the complaint, but I'm certain it is not California. I think it's Connecticut. I'm sure counsel can advise you of that. But if it is a payroll practice plan and not an ERISA plan, why did the complaint style this case as an ERISA case? Well, initially we thought it was an ERISA case. And when I filed it, that's what I thought it was. I didn't realize that it was even self-funded. We didn't have the documents when we initially filed it. Do you ever amend the complaint to allege your state law cause of action as a payroll practice and pivot away from ERISA? I did not. Very well. Counsel, we'll hear from you. Just a few quick points. With respect to the two egregious mistakes that were highlighted was the ignoring of CAT scans and the neuropsychological testing. I believe that those were addressed. If you look at the findings of fact, the MRI was specifically addressed, and this is on page five of the administrative record, dealing that there was no acute infarct nor hemorrhage and no mass. The reference to having no testing, I believe, was the neurological testing that was done by Dr. Wynn. And based on the peer-to-peer review conference that Dr. Swietynski had with Dr. Edelman, Dr. Edelman had apparently spoken to Dr. Wynn. And one of the things that was mentioned was that Dr. Wynn had encouraged her to come back to work. It's curious why those reports were never submitted to Aetna in the first place. And there was also some language in the administrative record reflecting frustration with Dr. Wynn's results. And so that's the testing that Aetna didn't have. And it did ask for the testing. If you look at the initial denial letter at page 606, there's a specific request for neuropsychological testing. As to the Thomas decision, Thomas is a decision that was decided after Willoughby, and that decision was based on Willoughby, did not reference FMC, and is improper for the same reasons that Willoughby is improper. How are you going to address his argument that this is all one plan, short-term and long-term? Boeing offers a group, a whole host of different plans, and they can be administered by different entities. Part of the master plan is the short-term disability plan, and that plan is separate from and has distinct requirements from the long-term disability plan. The short-term disability plan is funded by Boeing and administered by Aetna. It's not insured in any way, shape, or form. And the fact that there is a separate benefit that's being offered to Boeing employees in the form of a long-term disability plan, which is insured, is a separate plan that's going to be addressed and have a different analysis to it. And based on the application of the California Insurance Code, my guess is that under a long-term disability plan, insurance code would apply to that and void the discretionary language, but we're not dealing with that. We're dealing with the short-term disability plan. The long-term disability and Aetna's insurance role should not be considered. Correct. It's not an issue in this case. We don't even know if she qualifies for long-term disability benefits. The short-term disability benefits is the prerequisite to that. So based on that, and just to conclude, we would like to see that this court be remanded to address this issue with respect to the preemption because it's setting a precedent which district courts are having difficulty following, and there is now a split in authority with Thomas and Willoughby as well as the other two decisions, Martin and Johnson. But ultimately, the only two decisions that have correctly addressed the situation are Martin and Johnson, which is the controlling authority in this case. Thank you, Your Honors. Thank you very much to both counsel. The argument is submitted. Thank you both.
judges: M. Smith, N.R. Smith, Feinerman